IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Andrea Skean, ) | Civil Action No. 3:12-01837-MBS |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Truman A. Hopkins, DDS and ) | **ORDER AND OPINION** |
| Northwood Family Dentistry, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff Andrea Skean ("Plaintiff") filed this professional malpractice action seeking to recover damages from Defendants Truman A. Hopkins, DDS ("Hopkins"), and Northwood Family Dentistry ("NFD") (collectively "Defendants"). (ECF No. 1.) Defendants deny committing the acts of malpractice alleged by Plaintiff. (ECF No. 7.) This matter is before the court on Plaintiff's motion for partial summary judgment, Plaintiff's motion to compel, and Plaintiff's motion to determine the sufficiency of Defendants' responses to Plaintiff's "Second Discovery Requests" (the "sufficiency motion"). (ECF Nos. 20, 23, 24.) For the reasons set forth below, the court **GRANTS** Plaintiff's motion for partial summary judgment; **GRANTS** Plaintiff's motion to compel; and **GRANTS** in part and **DENIES** in part Plaintiff's sufficiency motion.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the natural mother and guardian of a minor daughter, "A.S.," who is now 12 years old. (ECF No. 1 at p. 2 ¶ 7.) Plaintiff alleges that A.S. was provided professionally negligent dental treatment by Defendants from 2008 through 2009. (Id. at 2-3.) Specifically,

1

Plaintiff alleges that she took A.S. to see Hopkins on May 6, 2008, and he took a panorex x-ray of A.S.'s teeth and jaws. (Id. at 2 ¶ 10.) Plaintiff further alleges that the panorex x-ray showed deviations from normal anatomy in A.S.'s lower jaw. (Id.) According to Hopkins, he saw a dark spot on the film, noted it and concluded it was a radiolucency. (ECF No. 24-1 at 2-3.) However, Hopkins neither informed Plaintiff about the alleged deviations or radiolucency nor referred A.S. to another dental provider for further evaluation. (ECF No. 1 at 2-3.)

On July 13, 2009, Hopkins examined A.S. and noticed abnormal swelling around her lower jaw. (Id. at 3 ¶ 13.) After allegedly reviewing again the May 6, 2008 panorex x-ray, Hopkins referred A.S. to an oral surgeon who diagnosed A.S. with a lesion. (Id. at ¶ 14.) Plaintiff alleges that as a result of Hopkins' failure to appropriately review the May 6, 2008 panorex x-ray and failure to timely diagnose and/or treat the lesion in A.S's lower jaw, the lesion grew in size and affected a larger portion of A.S.'s teeth and jaw, making treatment of the lesion more invasive and expensive. (Id. at ¶¶ 15-17.)

In accordance with the requirements of statutory law in South Carolina regarding claims of medical malpractice, Plaintiff filed a "Notice of Intent to File Suit" in the Lexington County (South Carolina) Court of Common Pleas on April 25, 2011.[1] (ECF No. 20 at 2.) Thereafter, the

---

1 A party alleging medical malpractice in South Carolina must undertake the following:

> Prior to filing or initiating a civil action alleging injury or death as a result of medical malpractice, the plaintiff shall contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness, subject to the affidavit requirements established in Section 15-36-100, in a county in which venue would be proper for filing or initiating the civil action. The notice must name all adverse parties as defendants, must contain a short and plain statement of the facts showing that the party filing the notice is entitled to relief, must be signed by the plaintiff or by his attorney, and must include any standard interrogatories or similar disclosures required by the South Carolina Rules of Civil Procedure. Filing the Notice of Intent to File Suit tolls all

parties took part in pre-suit mediation on March 27, 2012.[2]  (Id. at 3.)  However, the parties were unable to reach an agreement disposing of the matter at mediation.  (Id.)

On July 3, 2012, Plaintiff filed a complaint in this court against Defendants, alleging dental malpractice.[3]  (ECF No. 1.)  On August 8, 2012, Defendants filed their answer, denying Plaintiff's claims.  (ECF No. 7.)  In conjunction with the parties joint Fed. R. Civ. P. 26(f) report, the current amended scheduling order was entered on September 17, 2012, which order requires Defendants to disclose their experts by May 24, 2013, and discovery to be completed no later than July 19, 2013.  (ECF No. 17.)

Plaintiff served "First Discovery Requests" on Defendants on September 5, 2012.  (ECF No. 20 at 4.)  Defendants responded to the First Discovery Requests on or about October 29, 2012.  (ECF No. 20-1 at 7.)  On November 30, 2012, Plaintiff filed a motion to compel, seeking complete responses to the First Discovery Requests.  (ECF No. 20.)  Defendants filed opposition to Plaintiff's motion to compel on December 17, 2012.  (ECF No. 21.)

Plaintiff served Second Discovery Requests on Defendants on December 17, 2012.  (ECF

---

   applicable statutes of limitations.  The Notice of Intent to File Suit must be served upon all named defendants in accordance with the service rules for a summons and complaint outlined in the South Carolina Rules of Civil Procedure.

S.C. Code Ann. § 15-79-125(A).

[2] In medical malpractice actions in South Carolina, parties are required to participate in a mediation conference within 90 days and no later than 120 days from the service of the Notice of Intent to File Suit.  S.C. Code Ann. § 15-79-125©.

[3] "Dental malpractice refers to medical malpractice for an injury resulting from negligent dental work, failure to diagnose or treat a hazardous condition, delayed diagnosis or treatment of oral disease, or any intentional misconduct on the part of the dentist."  Av vo, http://www.avvo.com/legal-guides/ugc/have-you-suffered-from-dental-malpractice (last visited July 31, 2013); e.g., Dental Malpractice Group, http://dentalmalpracticegroup.com /what-is-dental-malpractice/ (last visited July 31, 2013) ("Dental malpractice is a form of medical malpractice dealing with injuries that occur during dental visit.").  For purposes of this order and opinion, the court will refer to Plaintiff's dental malpractice claims as medical malpractice claims.

No. 28 at 1.) Defendants responded to the Second Discovery Requests on or about January 16, 2013. (ECF No. 23-1 at 16.) On January 30, 2013, Plaintiff filed her sufficiency motion seeking review by the court of Defendants' responses to the Second Discovery Requests. (ECF No. 23.) Defendants filed opposition to Plaintiff's sufficiency motion on February 18, 2013, to which Plaintiff filed a reply in support of her motion on February 28, 2013. (ECF Nos. 25, 28.)

On January 30, 2013, Plaintiff filed a motion for partial summary judgment on the issue of malpractice, asserting that there is not a "genuine issue of material fact as to the Defendants' actions and conduct and the same amount to clear malpractice . . . ." (ECF No. 24.) Defendants filed opposition to Plaintiff's motion for partial summary judgment on February 18, 2013, to which Plaintiff filed a reply in support of its motion on February 28, 2013. (ECF Nos. 26, 27.) On June 27, 2013, Plaintiff filed a supplemental memorandum in support of her motion for partial summary judgment. (ECF No. 38.)

On July 10, 2013, the court held a hearing on Plaintiff's pending motions. (ECF No. 39.)

## II.   LEGAL STANDARD

A.   <u>Summary Judgment Generally</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. <u>Newport News Holdings Corp. v. Virtual City Vision</u>, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light

most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 252; Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

B.    Medical Malpractice Claims in South Carolina

Under South Carolina law, a plaintiff in a medical negligence case bears the burden of establishing by expert testimony both the standard of care and the defendant doctor's failure to conform to the standard of care. Gooding v. St. Francis Xavier Hosp., 487 S.E.2d 596, 599 (S.C. 1997). The South Carolina Supreme Court described a medical malpractice plaintiff's burden as follows:

> To prevail in a medical malpractice suit, the plaintiff must present evidence sufficient to satisfy the two prong test set forth in Cox v. Lund, 286 S.C. 410, 334 S.E.2d 116 (1985). The plaintiff must "(1) Present evidence of the generally recognized practices and procedures which would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances; AND (2) Present evidence that the defendant doctor departed from the recognized and generally accepted standards, practices and procedures in the manner alleged by the Plaintiff." Cox, 286 S.C. at ---, 334 S.E.2d at 118.

> In medical malpractice actions, the plaintiff must use expert testimony to establish both the required standard of care and the defendant's failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant. Botehlo v. Bycura, 282 S.C. 578, 320 S.E.2d 59 (Ct. App. 1984).

Pederson v. Gould, 341 S.E.2d 633, 634 (S.C. 1986).

In addition to proving the defendant doctor's negligence, a medical malpractice plaintiff must also prove that the defendant's negligence was a proximate cause of the plaintiff's injury:

> In a medical malpractice action, it is incumbent on the plaintiff to establish proximate cause as well as the negligence of the physician. Armstrong v. Weiland, 267 S.C. 12, 225 S.E.2d 851 (1976). Negligence is not actionable unless it is a proximate cause of the injury complained of, and negligence may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided. Hughes v. Children's Clinic, P.A., 269 S.C. 389, 237 S.E.2d 753 (1977). When one relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the injury, the experts must, with reasonable certainty, state that in their professional opinion, the injuries complained of most probably resulted from the defendant's negligence. Armstrong v. Weiland, supra. The reason for this rule is the highly technical nature of malpractice litigation. Since many malpractice suits involve ailments and treatments outside the realm of ordinary lay knowledge, expert testimony is generally necessary. When it is the only evidence of proximate cause relied upon, it must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection. Green v. Lilliewood, 272 S.C. 186, 249 S.E.2d 910 (1978).

Ellis v. Oliver, 473 S.E.2d 793, 795 (S.C. 1996).

C.     Motions to Compel

Parties in civil litigation generally enjoy broad discovery. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 983 (4th Cir. 1992) ("[T]he discovery rules are given 'a broad and liberal treatment.'") (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)). In defining the breadth of discovery, Fed. R. Civ. P. 26(b)(1) provides the following guidance:

6

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

Fed. R. Civ. P. 26(b)(1).

In addition to the foregoing, the rules regarding discovery allow a party to "move for an order compelling disclosure or discovery" or "an answer, designation, production, or inspection." See Fed. R. Civ. P. 37(a). In this regard, Fed. R. Civ. P. 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Id. Moreover, "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). "But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Id.

As part of the discovery contemplated by Fed. R. Civ. 26, a party is permitted to serve on their opponent written requests for admission. Fed. R. Civ. P. 36(a)(1). The party requesting admissions is further permitted to move the court to determine the sufficiency of any answer or objection to a request for admission. Fed. R. Civ. P. 36(a)(6). The court must order that an answer be served unless it finds that the objection was justified. Id. In addition, the court has

7

the authority to award attorney's fees and expenses incurred by a party in "making the proof" of a fact that an opposing party failed to admit when requested to do so. Fed. R. Civ. P. 37(c)(2).

### III.  ANALYSIS

A.  The Parties' Arguments

*1.  Plaintiff's Motion for Partial Summary Judgment*

Plaintiff moves the court for partial summary judgment on the issue of Defendants' malpractice in failing to properly investigate the radiolucency noted to be present on the May 6, 2008 panorex x-ray. In support of her motion, Plaintiff asserts that Hopkins' own testimony establishes that "(1) [he] looked at the panorex on May 6, 2008; (2) he saw the dark spot in question; (3) he determined the dark spot was a radiolucency; (4) he understood the radiolucency could either be an imaging artifact or a pathological lesion; (5) he recognized that an oral surgeon would be the person to differentiate between the two possibilities; (6) the standard of care is to tell the patient about the content of the panorex; (7) the standard of care is for the dentist who takes and reviews the panorex to arrange whatever treatment is appropriate based upon what he sees; [8] he did not tell the Plaintiff about the radiolucency; [and (9)] he did not refer the minor child to an oral surgeon." (ECF No. 24 at 2-3 (citing ECF No. 24-1 at 2-10).) Plaintiff further asserts that she has submitted sufficient expert testimony that establishes the standard of care, Defendants' failure to conform to the standard of care, and the proximate causation between Defendants' failure and Plaintiff's injury. (Id. at 3-4 (citing to ECF Nos. 24-2, 24-3, 24-4.).) In support of her assertion, Plaintiff first references Doctor of Dental Medicine ("DMD") Gregory W. Bottone ("Dr. Bottone"), who opined that:

> The standard of care is for the dentist to review the panorex when it is taken, note this sort of lesion, and refer the patient to an oral surgeon. (ECF No. 1-1, p. 2 at ¶ 5.) Failure to review the film, note the lesion and make the referral is a breach of

8

> the standard of care. (Id.)
>
> In my professional judgment, [Defendants] breached the standard of care applicable to its patient, A.S., resulting in harm to her. (Id. at 3 ¶ 9.)
>
> As I understand his testimony, Dr. Hopkins assumed this radiolucency was some sort of artifact from the imaging process and that it had no significance to A.S.'s condition. (ECF No. 24-3, p. 3 at ¶ 5.) However, the quite obvious divergence of roots and displacement of teeth cannot be explained by an imaging artifact or poor imaging quality due to malpositioning or movement of the patient. (Id.)
>
> The standard of care is for the dentist who takes the panorex to follow up on this sort of radiolucency. (Id. at ¶ 6.) It is not safe and it is not prudent for a dentist to simply assume such a radiolucency is due to some technical issue in the imaging process rather than an indication of an anatomical or pathological abnormality. (Id.)
>
> In my professional judgment, Dr. Hopkins breached the standard of care applicable to his patient, A.S., by assuming the panorex showed benign features despite the noted divergence and displacement and by failing to take any further steps to investigate the radiolucency which he admits he saw. (Id. at ¶ 9.)

Doctor of Dental Surgery ("DDS") Michael J. Bannister ("Dr. Bannister") provides further support for Plaintiff by opining that:

> I have reviewed a panorex x-ray of A.S. taken by Truman Hopkins, DDS on May 6, 2008. (ECF No. 24-4 at 2, ¶ 3.) I note an approximately 2 cm x 1 cm oval radiolucency at the apices of the lower anterior teeth. (Id.) The standard of care with a film like this would be to take a more detailed periapical film showing greater detail of the borders of the radiolucency. (Id.) This would eliminate any potential distortions from the panorex imaging process and allow the dentist to rule out the presence of any pathology in the patient's mandible. (Id.)
>
> In my professional judgment, Dr. Hopkins' conduct fell below the acceptable standard of care for a general dentist reading a panorex x-ray. (Id. at p. 3, ¶ 5.)

Based on the foregoing opinions, Plaintiff argues that she made a "prima facie showing – based upon undisputed facts – that the Defendants' conduct fell below the acceptable standard of care thereby constituting malpractice" and "[t]he only issue remaining for trial will be the extent to which this malpractice has caused harm to the minor child." (Id. at 5.)

9

Defendants oppose Plaintiff's motion for partial summary judgment, arguing first that the motion is premature because discovery is ongoing and expert discovery has yet to begin. (ECF No. 26 at 4 (citing, e.g., Woodard v. Lane, 2012 U.S. Dist. LEXIS 166801 (D.S.C. Nov. 21, 2012) (finding summary judgment premature where Defendants had not had the opportunity to discover information essential to their opposition and where the deadline for discovery had not yet passed).) Defendants secondly argue that Hopkins' testimony actually disputes many of the facts relating to liability and the standard of care that Plaintiff asserts are undisputed. (Id. at 4-7.) Specifically, Hopkins disagrees with Plaintiff that the May 6, 2008 panorex demonstrated deviations in A.S.'s jaw from a normal jaw, contained an abnormal radiolucency, or indicated a lesion in A.S.'s lower jaw. (Id.) Hopkins further disagrees with Plaintiff that the standard of care requires that all radiolucencies are of automatic concern and should be discussed with the patient and referred for further treatment. (Id. at 8.) Based on the foregoing, Defendants ask the court to deny Plaintiff's motion for partial summary judgment.

In reply, Plaintiff argues that she is entitled to partial summary judgment because Defendants have failed to identify any facts in genuine dispute and have failed to explain how her "experts' formulation of the standard of care is mistaken." (ECF No. 27 at 1.) Plaintiff further argues that Defendants' claim that the motion for partial summary judgment is premature does not absolve them of Fed. R. Civ. P. 56(d)'s requirement that "when facts are unavailable . . . . 'a nonmovant [must] show by affidavit or declaration that, for specific reasons, if cannot present facts essential to justify its opposition, . . . .'" (Id. at 1-2.) In support of her arguments, Plaintiff asserts that (a) Hopkins own testimony establishes the "undisputed material facts . . . that (1) Dr. Hopkins' saw a radiolucency on the May 6, 2008 panorex; and (2) he did nothing about it; and (b) her competent affidavits from two qualified dental experts establish that the

"undisputed standard of care is that when confronted with a radiolucency on the anterior mandible of a panorex, the dentist taking the panorex needs to do something about it." (Id. at 6-8.) Moreover, "[w]hen there exists undisputed evidence that a defendant's conduct violated a specifically articulated and directly applicable standard of care, a defendant does not create a genuine issue for trial by denying he did anything wrong, by expressing a lack of concern or by arguing over a standard of care which he has previously asserted a lack of qualifications to even state." (Id. at 8.) Therefore, Plaintiff asserts that she is entitled to partial summary judgment because Defendants "failed to demonstrate any genuine issue of material fact which counters the Plaintiff's competent, admissible prima facie proof of dental malpractice" and "failed to identify any specific, 'unavailable' document or witness 'essential' to their ability to respond to the Plaintiff's motion." (Id. at 8-9.)

In a supplemental memorandum filed in support of her motion for partial summary judgment, Plaintiff submitted opinions from her expert oral surgeon, Kenneth A. Storum ("Dr. Storum"), DDS, and Defendants' expert oral surgeon, Raymond J. Fonseca ("Dr. Fonseca"), DMD, in addition to testimony from Hopkins' dental hygienist, Mary Alice Leaphart ("Leaphart"). (See ECF No. 38.) In his expert's report, Storum concluded that:

> Dr. Hopkins failed to diagnose the lesion by omission which falls below the standard of care and is responsible for its continued growth and subsequent hospitalizations, surgeries, treatment with toxic medications, and future disabilities. (ECF No. 38-1 at 2.) He also fell below the standard of care when he saw radiographic evidence of an abnormality on a 7 year old, and failed to inform the parent. (Id.) Dr. Hopkins was specifically examining the anterior mandible, where the lesion was located, according to his records, due to the crowding of the mandibular anterior teeth. (Id.) His records document that the panorex radiograph of the anterior mandible demonstrated deviations from normal anatomy (citation omitted), but he did and said nothing which falls below the standard of care. (Id.)

11

> [I]f A.S.'s lesion was diagnosed and treated in 2008 it would have been a simple office surgery performed with local anesthesia or light sedation and hospitalization, general anesthesia and associated risks, an aggressive surgery to enucleate a lesion over six times larger than its presentation in May 2008, and treatment with dangerous chemotherapeutic drugs could have been avoided.  (Id. at 3.)
>
> It should be understood that if A.S.'s mandibular lesion was properly diagnosed and her parents informed in May of 2008 by Dr. Hopkins then she would not have been placed at risk for her present treatment and/or alternative treatments.  (Id. at 4.)

Dr. Fonseca neither contradicted Storum nor defined the appropriate standard of care, but did opine that Hopkins "was remiss in recognizing the stated 'radiolucency' as a lesion . . . ." (ECF No. 38-2 at 4.)  Finally, Leaphart, a dental hygienist for 36 years, testified that after seeing the "anomaly" on the panorex, Hopkins should have informed Plaintiff and referred A.S. to an oral surgeon.  (ECF No. 38-3 at 14.)

   2.   *Plaintiff's Motion to Compel*

Pursuant to Fed. R. Civ. P. 26, 33, 34, and 37, Plaintiff moves the court for an order compelling Defendants to fully respond to First Discovery Requests Nos. 3, 5, 14, 15, 17 and 18."  (ECF No. 20.)  Plaintiff complains that Defendants' response to Request No. 3 is insufficient because they failed to provide an answer as to whether any of A.S.'s treating physicians have ever been hired as expert consultants for defense counsel's firm.  (Id. at 4 (citing ECF No. 20-1, p. 3).)  As to Request Nos. 5 and 18, Plaintiff asserts that Defendants inappropriately objected and failed to provide the names of the third parties whose conduct allegedly caused A.S.'s injuries.  (Id. at 6-7 (citing ECF No. 20-1, pp. 3, 7).)  Plaintiff complains that Defendants' failed to provide any responses to Request Nos. 14 and 15 even though they have had A.S.'s medical records for almost a year.  (Id. at 7 (citing ECF No. 20-1, pp. 5-6).)  Finally, Plaintiff asserts that she is entitled to a response to Request No. 17 seeking the standard

of care for A.S.'s treatment because Defendants have alleged that their conduct was at all times within the applicable standard of care. (Id. at 8 (citing ECF No. 20-1, p. 6).)

Defendants oppose Plaintiff's motion to compel, arguing that the motion is an attempt to attack the defenses in the answer and improperly shift the burden of proof to Defendants. (ECF No. 21 at 2.) Defendants assert that their responses to Request Nos. 5 and 18 are appropriate because "[a]t the time Defendants answered, and given the voluminous information to be discovered, it was absolutely prudent for Defendants to assert that a third-party could be responsible for the minor's alleged injuries." (Id. at 4.) Defendants further assert that their objections to Request Nos. 14, 15, and 17 are proper because the Requests seek "to impose upon Defendants the duty of establishing the standard of care and because it seeks premature disclosure of expert opinions and testimony." (Id. at 6-8.)

*3.     Plaintiff's Sufficiency Motion*

Pursuant to Fed. R. Civ. P. 36(a)(6), 37(a)(4), 37(a)(5), and 37(c)(2), Plaintiff moves the court for an order determining the sufficiency of Defendants' responses to her Second Discovery Requests. (ECF No. 23.) In her sufficiency motion, Plaintiff argues that Defendants failed to properly answer Request Nos. 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24.[4] (ECF No. 23 at 2.) Plaintiff asserts that Defendants' "Responses to Plaintiff's Second Discovery Requests can only be seen as evasive, non-responsive and designed to vexatiously magnify the time and expense of resolving the parties' dispute." (ECF No. 23 at 5.) Therefore, Plaintiff "asks the Court to order the Defendants to provide a clear and unequivocal answer to all those discovery requests . . . ." (Id. at 6.)

---

4 In the Second Discovery Requests, Request Nos. 1, 2, and 25 were interrogatories, while Request Nos. 3 through 24 were requests for admission. (See ECF No. 23-1.)

Defendants oppose Plaintiff's sufficiency motion, arguing that the information sought in Plaintiff's Second Discovery Requests "prematurely requires Defendants to present expert testimony" and improperly shifts to them "Plaintiff's burden to prove her case through expert testimony." (ECF No. 25 at 3.) In this regard, Defendants assert that they adequately responded to Request Nos. 1, 2, and 25 as best they could prior to the completion of expert discovery. (Id. at 3-5.) Moreover, Defendants assert that they did admit Request Nos. 3, 4, 6, 7, 9, and parts of 19, 20, and 21 by craving reference to the applicable medical records. (Id. at 6.) However, they were unable to admit or deny Request Nos. 5, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 22, and parts of 19, 20, and 21, because these Requests address ultimate diagnoses by other physicians. (Id. at 7.) As a result, Defendant posed objections to these Requests because they improperly sought "admissions and legal conclusions that go to the heart of the allegations of medical malpractice in this case." (Id.) Based on the foregoing, Defendants believe they have acted within the confines of the Federal Rules of Civil Procedure and, therefore, contend that Plaintiff's sufficiency motion should be denied.

In reply, Plaintiff asserts that the reason for her Second Discovery Requests was "to learn whether the Defendants would agree that giant cell granuloma is the correct diagnosis, . . . ." (ECF No. 28 at 1.) Moreover, until the filing of their opposition to Plaintiff's sufficiency motion, Defendants did dispute the diagnosis of a giant cell granuloma in their responses to prior written discovery. (Id. at 2.) As a result, Plaintiff "asks the Court to declare that the instant motion should never have been required in the first place by ruling that the Plaintiff's requests for admission be deemed admitted pursuant to Rules 36(a)(6) and 37(a)(4); and by [sanctioning Defendants] pursuant to Fed. R. Civ. P. 37(a)(5) and 37(c)(2) in order to fairly compensate Plaintiff's counsel for time and effort spent in bringing about the Defendants' belated stipulation

of a fact which they previously denied." (Id. at 5.)

B.  The Court's Review

   1.  *Plaintiff's Motion for Partial Summary Judgment*

Upon the court's review, Plaintiff presented uncontroverted expert testimony from Dr. Bottone, Dr. Bannister, and Dr. Storum regarding the applicable standard of care, Defendants' failure to conform to the standard of care, and the proximate causation between Defendants' failure and Plaintiff's injury. In this regard, Defendants are unable to create a genuine issue of material fact regarding their liability for medical malpractice by (1) asserting that Plaintiff's motion is premature, (2) offering statements from Hopkins' denying "that any of my actions in treating the minor A.S. fell below the standard of care" and (3) providing Dr. Fonseca's expert opinion that Hopkins' failure to diagnose the lesion "did not alter [A.S.'s] ultimate treatment regimen nor the success of the outcome that was achieved." (ECF Nos. 17 at 2; 26-2 at 3; 38-2 at 4, 5.) Based on the foregoing, Plaintiff has satisfied her burden of establishing by expert testimony the standard of care, Defendants' failure to conform to the standard of care, and that Defendants' failure proximately caused her damages. Therefore, Plaintiff is entitled to partial summary judgment on the issue of Defendants' liability for medical malpractice.

   2.  *Plaintiff's Motion to Compel*

In the responses to the First Discovery Requests disputed by Plaintiff, Defendants stated that responsive information would be developed through use of expert testimony or discovery. (See, e.g., ECF No. 21-1 at 7, 8, 10.) Because Defendants have had a full opportunity to engage in discovery, the court grants Plaintiff's motion to compel and hereby orders Defendants to fully supplement their responses to First Discovery Request Nos. 3, 5, 14, 15, 17, and 18, no later than 14 days after entry of this order. See Fed. R. Civ. P. 26(e) ("A party who has made a disclosure

under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: . . . (B) as ordered by the court.").

### 3. *Plaintiff Sufficiency Motion*

Upon review of Defendants' responses to the Second Discovery Requests disputed by Plaintiff, the court will not require Defendants to supplement their answers to Requests Nos. 5, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 22, 23, 24, and parts of 19, 20, and 21, because these Requests sought to have Defendants admit or deny specific diagnoses made by other physicians. See Tuvalu v. Woodford, Case No. 04–1724, 2006 WL 3201096, at*7 (E.D. Cal. Nov. 2, 2006) ("[R]equests for admission should not be used . . . to ask the party to admit facts of which he or she has no special knowledge.") (citing Disability Rights Council v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.C. Cir. 2006)). The court will further not require Defendants to supplement their answers to Requests Nos. 7 and the parts of 19, 20, and 21 that were admitted by Defendants. The court does order Defendants to supplement their responses to Second Discovery Requests Nos. 1, 2, and 25, because Defendants' stated reservation to answering these Requests is no longer valid.[5] However, the court does not find it appropriate to grant Plaintiff sanctions pursuant to Fed. R. Civ. P. 37, resulting from the filing of the sufficiency motion. In determining that a Fed. R. Civ. P. 37 sanctions are not appropriate, the court considered the following factors set out by the Fourth Circuit Court of Appeals: "(1) whether the noncomplying

---

5 In addition to their specified objections to answering Second Discovery Requests Nos. 1, 2, and 25, Defendants specifically reserved "the right to engage in further discovery, including expert discovery, and to supplement this response when and if appropriate." (See ECF No. 23-1 at pp. 3-4, 15-16.) Because the expert and discovery deadlines have passed, the discovery rules require Defendants to supplement their responses to Second Discovery Requests Nos. 1, 2, and 25. See Fed. R. Civ. P. 26(e).

party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 348 (4th Cir. 2001).

## IV.  CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** Plaintiff's motion for partial summary judgment on the issue of Defendants' liability for medical malpractice. (ECF No. 24.) The court further **GRANTS** Plaintiff's motion to compel and orders Defendants to provide Plaintiff supplemental answers to First Discovery Requests Nos. 3, 5, 14, 15, 17, and 18 no later than 14 days after entry of this order. (ECF No. 20.) The court **GRANTS** in part Plaintiff's motion to determine the sufficiency of Defendants' responses to Plaintiff's Second Discovery Requests and orders Defendants to provide supplemental answers to Second Discovery Requests Nos. 1, 2, and 25 no later than 14 days after entry of this order. (ECF No. 23.) The court **DENIES** the sufficiency motion as to Second Requests Nos. 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24. (Id.) Plaintiff's motion for sanctions in conjunction with the sufficiency motion is also denied without prejudice.

**IT IS SO ORDERED**.

s/Margaret B. Seymour
MARGARET B. SEYMOUR
SENIOR UNITED STATES DISTRICT JUDGE

July 31, 2013
Columbia, South Carolina